No. 3196

Second Circuit

RED RIVER CONSTRUCTION CO. v.
NORDSTROM ET AL.

(March 12, 1929. Opinion and Decree.)

Cook and Cook, of Shreveport, attorneys for plaintiff, appellant.

Phanor Breazeale, of Natchitoches, attorney for defendant, appellee.

ODOM, J. This suit involves a settlement of accounts between the Red River Construction Company, plaintiff, and C. Nordstrom and D. Laborde, arising out of a contract to construct portions of a highway in the Parish of Natchitoches.

The plaintiff alleges that it entered into a contract with the Louisiana Highway Commission to construct certain portions of the road designated as projects 429-D and 430-A, located in the Parish of Natchitoches; that it sub-contracted to C. Nordstrom certain portions of the work and that it has paid to the said Nordstrom the entire amount due him; and further alleges that said D. Nordstrom, claiming an indebtedness against it, has filed liens amounting to $1638.60; that the claim of Laborde against it is without foundation, and it asks that the liens filed by Laborde be cancelled and erased from the records of the Parish of Natchitoches.

It is further alleged that the claim of Laborde and the liens filed by him are the result of a conspiracy entered into between Nordstrom, its sub-contractor, and Laborde to collect an amount from plaintiff not due; that plaintiff had paid to Nordstrom all that was due him and, admitting that Laborde did some work on the road, it is claimed that he was working for and under Nordstrom, as foreman. Plaintiff asks that both Nordstrom and Laborde be cited and that there be judgment cancelling the liens filed by Laborde.

Both Nordstrom and Laborde answered. Nordstrom denied that there was any conspiracy between him and his brother-in-law, Laborde, and that he had no knowledge as to the account claimed by Laborde; and further set up that plaintiff was indebted unto him in the sum of $2324.02 for which he reconvened and asked judgment.

Laborde, in his answer, alleged that the amount which he claimed and for which he filed a lien was due for work done by him under contract with the plaintiff company, and that it had no connection with Nordstrom's contract. There was judgment in the District Court in favor of Nordstrom on his reconventional demand for $1060.15, rejecting Laborde's demands against plaintiff, and ordering the lien cancelled. From this judgment, plaintiff, Red River Construction Company, appealed, and under its appeal the entire transcript was sent up to this Court. This judgment was rendered on October 22, 1927.

On June 14, 1928, Laborde petitioned the Court for a devolutive appeal, which was granted by the Court under written order and the bond was fixed at $100.00, which was promptly given and filed.

In this Court, Nordstrom filed a motion to increase the amount allowed him, and plaintiff moved to dismiss Laborde's appeal.

## ON MOTION TO DISMISS LABORDE'S APPEAL.

Counsel for plaintiff company on the first day of the present session of this Court moved to dismiss Laborde's appeal on the ground that he had failed to file any transcript whatever of his appeal in this Court within the return date.

The facts are that Laborde took no appeal at the time judgment was rendered in the District Court. But, within twelve months thereafter, he filed a written motion asking that he be granted a devolutive appeal, and that the bond therefor be fixed. The Court granted the appeal and fixed the bond at $100.00; and fixed the return date for July 9, 1928. The Clerk of Court at Natchitoches, Louisiana, forwarded the application and order for the appeal, together with the appeal bond, to the Clerk of this Court on July 9. When it was received by the Clerk of this Court, those documents were placed in the transcript already brought up and filed by plaintiff. But he failed to mark such documents "FILED". As the documents appeared in the record, there was nothing to indicate the date on which they were received by the Clerk of this Court, and counsel for plaintiff contend that the appeal should be dismissed, as the record does not affirmatively show that the documents were filed in this Court on time.

On having his attention called to the fact that there was nothing to show that said documents were filed in this Court on time, the Clerk, looking through his files, found a letter from the Clerk of Court at Natchitoches, dated July 9, 1928, in which he stated that he was enclosing said documents, naming them, and asking that they be placed in the record as part of the transcript. The Clerk of this Court now certifies that said documents were received by him in due mail and that he promptly placed them in the record. As the documents were mailed out of Natchitoches on July 9, the return date fixed by the Judge, and as appellant had three days of grace in which to file his appeal, we think there is no question but that they reached this Court in ample time, and that the failure to mark them "FILED" on arrival was not due to any

negligence on the part of appellant, and that we should not penalize him for a mistake or error for which he is not responsible. The motion to dismiss is, therefore, overruled.

## OPINION.

As already stated, C. Nordstrom filed a reconventional demand against the plaintiff, claiming an indebtedness of something over $2,000.00. If the Court had to depend upon the testimony of Nordstrom himself, it is perfectly clear that no judgment could be granted in his favor. However, the record is clear that the plaintiff owes him $1060.15. We arrived at that amount from the admissions made by defendant's witnesses, and not from testimony given by the plaintiff. Nordstrom, did not take the stand as a witness in his own behalf. He was called on cross-examination by counsel for plaintiff and was asked specifically about the claim of Laborde. He was not asked about his own account. At the close of this cross-examination, he was excused and was never called back to the stand.

Mr. Marston, as a witness for the plaintiff company, admitted that his company was due Nordstrom the sum of $16,767.18, and that it had paid him only $15,707.03, leaving a balance of $1060.15.

The only testimony in the record which tends to support the claim of Nordstrom that plaintiff owes him any amount in excess of that above mentioned ·is found on pages 31 and 32 of the transcript. While Mr. Marston, a member of the plaintiff company, was on the stand as a witness, and while on cross-examination, he was questioned by counsel for Nordstrom with reference to certain items which it seems appeared on an itemized statement of Nordstrom's claim which counsel then had before him. Counsel refers to such an account as taken from Nordstroms' books and we, therefore, infer that there was such an account, or at least, a memorandum of the account in Court, and we find on page 32 this statement, coupled with a question:

"Q. The whole of that figures up $17,-858.78, which has been reduced by the testimony by about $90.00. What are your figures on both projects?
"A. $16,767.18."

If we assume that the total indebtedness claimed by Nordstrom on his statement was $17,858.78, taking Marston's admission that plaintiff owed $16,767.18, it will be seen that there was a difference of $1091.60. Counsel for Nordstrom insists that we should adopt Nordstrom's figures as the total amount due him on both projects. We are unable to do so for the reason that Nordstrom gave no testimony as to the correctness of his account—but, on the contrary, Marston swore that his company owed him only $16,767.18.

When Mr. Marston was first interrogated about the amount which his company was due Nordstrom, he testified that it was due him nothing. Later on, however, after talking with his partner, Ferguson, he corrected his former testimony and admitted that Nordstrom had not been credited with the sum of $1259.65 which was properly due him. Counsel for Nordstrom argues that this amount should be added to the $16,767.18, which Marston stated was the total amount due. We think counsel is in error on that point for we are satisfied that the $1259.65 was included in the total amount which Marston admitted his company was due for work on the two projects. We reached this conclusion because Marston first testified (p. 25, Tr.) that the total amount due Nordstrom on both projects· was $15,634.76.

Our conclusion is that the finding of the District Judge as to the amount due Nordstrom is correct.

## AS TO THE CLAIM OF LABORDE.

It is claimed by Laborde, on the one hand, that he made an independent contract with plaintiff to do certain work in the building of the roads and that his claim had no connection whatever with Nordstrom's sub-contract under plaintiff. On the other hand, it is claimed by plaintiff that all the work that Laborde did was in connection with Nordstrom's contract. Without going into detail, our conclusion is that Laborde did certain work for the plaintiff company, not in any way connected with Nordstrom's contract, and for which work he has not been paid. However, it is evident that some of the work done by Laborde should have been done by Nordstrom. We rely very largely upon the testimony of Mr. Richardson, the highway engineer, who was asked specifically about the different items on Laborde's account which do not come under Nordstrom's contract. Richardson says that he himself ordered Laborde to do a portion of the work charged to plaintiff. Richardson was in position to know and, we take it, did know what specific work was to be done by Nordstrom under his contract with the plaintiff company. It cannot be disputed that such work as Laborde did for the plaintiff company, which was not included in Nordstrom's contract, should be paid for by the plaintiff. The items claimed by Laborde, which we allow on the testimony of Richardson, the engineer, are for grubbing stumps, removing trees, sloping certain ditches, for tractor for pulling stumps and labor, clearing ground, cutting bump on slope, digging a culvert and "shaping up" the road, fixing a curve between the tram road and main line,

cutting a hill in cut between Flora Filling Station and Tram road. One item charged by Laborde on project 430-A is $700.00, for "shaping up" from Station 748 to Station 915; Mr. Richardson says that this is excessive and that Laborde should be paid about $265.00 on this item. On the statement with reference to project 429-D, Laborde charged $300.00, for "running grader tractor and teams putting road in shape to lay gravel on from upper end of project 429-B to station 606." Mr. Richardson says that $60.00 is all plaintiff is due him under that item. Checking up the items on both accounts which Mr. Richardson says should be paid by plaintiff to Laborde and adding them, we get a total of $693.40.

It is evident from the judgment rendered in the lower court, that the Judge recognized that the plaintiff company was due something, either to Laborde or to Nordstrom, for the right of Nordstrom to sue in his own name for the work done by Laborde was especially reserved. Our reading of the testimony, however, has convinced us that the claim which we have allowed in favor of Laborde was for work done by him for the plaintiff company, and in no way connected with Nordstrom's contract.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be affirmed insofar as it allows Nordstrom $1060.15, a portion of which is ordered paid to the Ingraham Grocery Company; and reversed insofar as it rejected the claim of Laborde in reconvention; and it is further ordered and decreed that there be judgment in favor of Deny Laborde, and against the Red River Construction Company, in the full sum and amount of $682.40, and that his lien for said amount be recognized and enforced; and further

ordered that when said amount is paid by the Red River Construction Company to Laborde, that the lien filed by him be cancelled and erased from the records of Natchitoches; costs in both courts to be paid by the Red River Construction Company.